No. 23-1781

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

SACRED HEART OF JESUS PARISH, GRAND RAPIDS; JERRY HATLEY; ROBIN HATLEY; JOSEPH BOUTELL; RENEE BOUTELL; PETER UGOLINI; KATIE UGOLINI,

*Plaintiffs-Appellants,*

v.

DANA NESSEL, in her official capacity as Attorney General of Michigan; JOHN E. JOHNSON, JR., in his official capacity as Executive Director of the Michigan Department of Civil Rights; et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Michigan
Case No. 1:22-cv-01214

### APPELLANT'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO SUPPLEMENT THE APPELLATE RECORD OR TAKE JUDICIAL NOTICE

David A. Cortman
Ryan J. Tucker
Katherine L. Anderson
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
dcortman@ADFlegal.org
rtucker@ADFlegal.org
kanderson@ADFlegal.org

Cody S. Barnett
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
cbarnett@ADFlegal.org

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

*Counsel for Plaintiffs-Appellants*

When Sacred Heart sued, it had standing to challenge the Elliott-Larsen Civil Rights Act and Michigan's public-accommodations law because the school faced "a substantial risk" of being "harm[ed]" by these laws simply for exercising its constitutional rights. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); Opening Br. 21–49. Michigan disagreed, and the district court accepted Michigan's argument that Sacred Heart lacked standing in part because of a supposed absence of enforcement history. Order, R.44, PageID#954–57.

Confronted now with complaints alleging gender-identity discrimination against a religious organization and a salon, Michigan tries to dodge the new evidence. But the State cannot have it both ways. It can't simultaneously contest standing based on a supposed lack of enforcement history while also precluding evidence of that history. Although enforcement history is not dispositive and Sacred Heart has standing even without it, this new evidence indisputably shows that Michigan enforces its laws and would do so against Sacred Heart. This Court should consider the evidence either under its inherent equitable authority or its freedom to judicially notice public records.

This Court has inherent equitable authority to supplement the record on appeal, and appellate courts routinely exercise this authority when deciding jurisdictional questions. Michigan does not contest this authority but instead argues that Sacred Heart's cited cases involved mootness, not standing. But mootness is often "standing set in a time frame." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997). Both doctrines are "driven above all by practicalities," *Ohio v. EPA*, 969 F.3d 306, 309 (6th Cir. 2020)—in this case, whether Sacred Heart will suffer "real consequences" if its exercises its constitutional rights, *Peck v. McCann*, 43 F.4th 1116, 1132 (10th Cir. 2022). So Michigan's distinctions are without a difference.

Michigan next takes umbrage with the fact that the complaints came after Sacred Heart sued. To be clear, Sacred Heart has standing even without the records because it feared at the time it sued that Michigan would enforce the Act against it. These records merely show what Sacred Heart knew all along: that Michigan's Attorney General will make good on her campaign promises. Opening Br. 13–14. The records demonstrate that: (1) Michigan vigorously enforces its laws, (2) it does so against religious organizations, (3) it does so based on alleged gender-

identity discrimination, (4) it facilitates public enforcement, and (5) it prosecutes based solely on an organization's speech. The records therefore establish "beyond doubt" the credible fears Sacred Heart had when it sued. *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1013 (6th Cir. 2003).

Moreover, several other circuits—the First, Second, Fourth, Ninth, D.C., and Federal—allow plaintiffs to cure standing defects through supplemental pleadings. Rory T. Skowron, *Whether Events After the Filing of an Initial Complaint May Cure an Article III Standing Defect: The D.C. Circuit's Approach*, 61 B.C.L. Rev. E-Supplement II.-230, II.–233–35 & n.20 (2020) (collecting cases). That's because it's inefficient to "force[ ] a plaintiff to go through the unnecessary hassle and expense of filing a new lawsuit when events subsequent to filing the original complaint have fixed the jurisdictional problem." *Scahill v. District of Columbia*, 909 F.3d 1177, 1184 (D.C. Cir. 2018). That inefficiency is even stronger here where Sacred Heart had standing and the new evidence only further confirms that point.

To supplement the record on appeal here would compliment, not conflict, with the cases Michigan cites. For instance, Michigan relies on

3

*Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513 (6th Cir. 2001), and *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564 (6th Cir. 2012). But these cases established that once standing is established, it cannot be "ousted" by subsequent events. *Cleveland Branch*, 263 F.3d at 523–24 (cleaned-up); *Ohio Citizen Action*, 671 F.3d at 580–81. Neither case addressed the inverse situation—whether standing can be established or confirmed by post-filing events. The weight of authority on that point runs the opposite direction of what Michigan argues.

Finally, Michigan bemoans that this new evidence might mean that "any complaint filed … that involves LGBTQ discrimination demonstrates … standing." Resp. to Mot. to Suppl. 3. That's precisely the point, for such alleged "discrimination" is what the statute facially regulates, is what Attorney General Nessel promised to target, and is exactly what Michigan investigates and prosecutes. As Sacred Heart demonstrated and as this new evidence further shows, that's true even if the targeted organization is religious. This Court should exercise its inherent authority to include the complaints against Emmaus Health Partners and the emails about the salon as evidence in the record on appeal.

4

Alternatively, this Court can judicially notice the supplemental evidence. *Ohio v. Becerra*, No. 21-4235, 2023 WL 8270957, at *14 (6th Cir. Nov. 30, 2023) ("[W]e retain the power to take judicial notice of changed circumstances."). Michigan admits that "the filing of a complaint with the MDCR may be judicially noticed." Resp. to Mot. to Suppl. 8. That's exactly what Sacred Heart wants this Court to do.

Michigan claims that Sacred Heart is "relying upon the substance of the MDCR complaints for this Court to assess whether they support its standing." *Id.* Not true. Sacred Heart takes no position on whether the allegations in these complaints are true, nor does it matter for this case. There's a difference "between noticing the 'existence' of a statement of fact in court records and noticing the 'truth' of that fact." 21B Charles Alan Wright et al., *Federal Practice and Procedure* § 5106.4 (2023 update). That's why, for example, a court may take judicial notice of the content of an objection to a different bankruptcy court's sale order or the content of that order without taking judicial notice "of the facts" of the objection or order. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008).

The Emmaus Health Partners complaint alleges that "a Catholic clinic" engaged in "gender identity" discrimination after discussing "medications." Decl. of Jessica Hoff, Ex. 2. The complaint is relevant because it shows that those allegations—regardless of their veracity—are sufficient to trigger a complaint with Michigan and for Michigan to receive the complaint.

That's different from *Davis v. City of Clarksville*, 492 F. App'x 572 (6th Cir. 2012). There, the plaintiff asked for judicial notice of "numerous depositions and affidavits" to prove "substantive facts …, many of which [were] disputed." *Id.* at 578. Here, Sacred Heart asks this Court to judicially notice one page of a complaint that Michigan received without resolving or accepting as true any facts in the complaint.

As for the email exchanges about the salon, Michigan Department of Civil Rights' Director of Enforcement Marcelina Trevino and Communications Director Vicki Levengood confirmed Michigan received "12 complaints against the Studio 8 Salon." Decl. of Jessica Hoff, Ex. 3 at 13, 15. Michigan neither contests the authenticity of these emails nor disputes the accuracy of the number of complaints generated by its own staff. So the emails are subject to judicial notice too.

Michigan also contends judicial notice is not warranted because the evidence does not show that Michigan "would improperly deny … religious freedoms." Resp. to Mot. to Suppl. 8–9. As reviewed, a *possible* exemption from Michigan's laws on the back end is a merits question; it says nothing about the harm Sacred Heart faces from credible enforcement threats *today*. Opening Br. at 45–46. The proffered evidence bolsters the credibility of such threats, showing that Sacred Heart's "predicted" fears have "come to pass," so this Court should judicially notice the records. *Ohio*, 2023 WL 8270957, at *14.

Dated: December 4, 2023

                        Respectfully submitted,

                        */s/ Cody S. Barnett*
                        Cody S. Barnett
                        ALLIANCE DEFENDING FREEDOM
                        44180 Riverside Pkwy
                        Lansdowne, VA 20176
                        (571) 707-4655
                        cbarnett@ADFlegal.org

## RULE 32(G)(1) CERTIFICATE OF COMPLIANCE

This reply complies with the word limit of Fed. R. App. P. 27(d)(2)(C) because it contains 1,268 words, excluding parts exempted by Fed. R. App. P. 27(a)(2)(B).

This reply complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: December 4, 2023

*/s/ Cody S. Barnett*
Cody S. Barnett

*Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2023, I electronically filed the foregoing reply with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Cody S. Barnett*
Cody S. Barnett

*Attorney for Plaintiffs-Appellants*
