No. 23-1781

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

SACRED HEART OF JESUS PARISH, GRAND RAPIDS; JERRY
HATLEY; ROBIN HATLEY; JOSEPH BOUTELL; RENEE BOUTELL;
PETER UGOLINI; KATIE UGOLINI,

      Plaintiffs-Appellants,

v.

DANA NESSEL, in her official capacity as Attorney General of
Michigan; JOHN E. JOHNSON, JR., in his official capacity as
Executive Director of the Michigan Department of Civil Rights;
PORTIA L. ROBERSON, ZENNA FARAJ ELHASON, GLORIA E.
LARA, REGINA GASCO-BENTLEY, ANUPAMA KOSARAJU,
RICHARD CORRIVEAU, DAVID WORTHAMS, and LUKE R. LONDO
in their official capacities as members of the Michigan Civil Rights
Commission,

      Defendants-Appellees.

Appeal from the United States District Court
Western District of Michigan, Southern Division
Honorable Jane M. Beckering

**CORRECTED BRIEF FOR STATE DEFENDANTS-APPELLEES**

Cassandra A. Drysdale-Crown (P64108)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants-Appellees
Civil Rights & Elections Division
P.O. Box 30736
Lansing, MI 48909
(517) 335-7659
DrysdaleCrownC@michigan.gov
Meingasth@michigan.gov

Kimberly Pendrick (P60348)
Assistant Attorney General
Attorney for Defendants-Appellees
Civil Rights & Elections Division
3030 W. Grand Blvd., 10th Floor
Detroit, MI 48202
PendrickK@michigan.gov

Dated:  December 20, 2023

# TABLE OF CONTENTS

Page

Table of Contents ...................................................................................i

Index of Authorities..............................................................................iv

Statement in Support of Oral Argument.................................................x

Jurisdictional Statement........................................................................xi

Statement of Issues Presented...............................................................xii

Introduction .........................................................................................1

Counter-Statement of the Case..............................................................3

      A.    A brief chronology of the recent progression of LGBTQ
           rights in Michigan. .................................................................3

      The Commission's Interpretive Statement.....................................3

      *Rouch World, LLC, et al v. Dep't of Civil Rights (MDCR)*...............4

      The ELCRA is amended include sexual orientation and
           gender identity and expression as protected categories ........7

      B.    Procedural history.................................................................7

      Sacred Heart and Sacred Heart Academy's claims........................7

      The District Court dismisses the complaint...................................9

Standards of Review.............................................................................11

Summary of Argument.........................................................................12

Argument.............................................................................................14

I.    The District Court correctly held that Plaintiffs did not have
      standing to maintain their claims. ...............................................14

A.   Standing requires a concrete, actual or imminent harm, not a generalized grievance against government conduct or a mere subjective allegation of chill....................14

B.   Plaintiffs failed to sufficiently allege an injury to support pre-enforcement review. ..........................16

    1.   Sacred Heart's intended conduct is not arguably proscribed by the ELCRA or the EAA. ........................18

    2.   Plaintiffs failed to sufficiently allege a credible threat of enforcement under the ELCRA or the EAA. ...........................................................25

II.  Plaintiffs' claims are not ripe for review because they have not demonstrated a credible threat of enforcement of the ELCRA or the EAA. ....................................................38

A.   For a claim to be ripe, the factual record must be sufficiently developed and a credible threat of harm must exist, and the denial of review must create a hardship.....................................................39

    1.   Plaintiffs did not allege a credible threat of enforcement under the ELCRA or EAA. ....................40

    2.   Plaintiffs' claims do not arise out of sufficiently concrete facts to support judicial review. ....................44

    3.   Plaintiffs have not shown sufficient hardship absent judicial review. ..................................45

III. The District Court properly declined to address Plaintiffs' motion for a preliminary injunction where the court determined it lacked subject-matter jurisdiction. ........................48

A.   Plaintiffs' request that this Court grant an injunction should be rejected and the matter remanded to the District Court for full consideration of the injunction factors. .....................................................48

B.    If this Court addresses the merits of Plaintiffs' request for a preliminary injunction, it should deny that request where Plaintiffs cannot satisfy the four factors necessary for such relief.........................................................52

1.    Plaintiffs have not demonstrated they will suffer irreparable harm absent issuance of an injunction. ..................................................................54

2.    Issuance of a preliminary injunction would harm Michigan residents and would be contrary to the public interest. ..........................................................56

Conclusion and Relief Requested...........................................................59

Certificate of Compliance.......................................................................60

Certificate of Service ..............................................................................61

Designation of Relevant District Court Documents..............................62

# INDEX OF AUTHORITIES

Page

**Cases**

*Abbott Lab'ys v. Gardner*, 387 U.S. 136 (1967) ...................................... 40

*Abney v. Amgen, Inc.*, 443 F.3d 540 (6th Cir. 2006) .............................. 54

*Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563 (6th Cir. 1995) ..................................................................................... 16

*AES-Apex Emp. Servs., Inc. v. Rotondo*, 924 F.3d 857 (6th Cir. 2019) ..................................................................................... 11

*Assemany v. Archdiocese of Detroit*, 434 N.W.2d 233 (Mich. Ct. App. 1988) ................................................................................ 22, 23

*Bailey v. Callaghan*, 715 F.3d 956 (6th Cir. 2013) ............................... 53

*Benisek v. Lamone,* 138 S. Ct. 1942 (2018) ............................................ 52

*Bigelow v. Virginia,* 421 U.S. 809 (1975) .............................................. 15

*Block v. Canepa*, 74 F.4th 400 (6th Cir. 2023) ...................................... 30

*Bonnell v. Lorenzo*, 241 F.3d 800 (6th Cir. 2001) ................................. 50

*Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020) ................................... 5

*Bush v. Rauch*, 38 F.3d 842 (6th Cir. 1994) .......................................... 11

*Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520 (6th Cir. 2020) ........ 49

*Champion v. Secretary of State*, 761 N.W.2d 747 (Mich. App. 2008) ..... 20

*Clapper v. Amnesty Int'l.*, 568 U.S. 398 (2013) ........................... 16, 17, 29

*Cnty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477 (6th Cir. 2002) ..................................................................................... 12

*Coal. to Def. Affirmative Action v. Granholm*, 473 F.3d 237 (6th Cir. 2006) ..................................................................................... 57

*Congregation Lubavitch v. City of Cincinnati*, 923 F.2d 458 (6th Cir. 1991) ..................................................................... 57

*D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324 (6th Cir. 2019) ............... 48, 54

*Daunt v. Benson*, 956 F.3d 396 (6th Cir. 2020) ...................................... 15

*Davis v. Colerain Twp., Ohio*, 51 F.4th 164 (6th Cir. 2022) ................... 34

*Doe v. Univ. of Mich.*, 78 F.4th 929 (6th Cir. 2023) .......................... 28, 43

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018) ...................................................................... 4

*Emp't Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872 (1990) ...................................................................... 21, 24

*Fisher v. Thomas*, 52 F.4th 303 (6th Cir. 2022) ..................................... 27

*Foresight Coal Sales, LLC. v. Chandler*, 60 F.4th 288 (6th Cir. 2023) ...................................................................... 51

*Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100 (6th Cir. 1982) ...................................................................... 54

*Glenn v. Holder*, 690 F.3d 417 (6th Cir. 2012) .................................. 11, 25

*Graveline v. Benson*, 992 F.3d 524 (6th Cir. 2021) ...................... 15, 18, 28

*Green Party of Tenn. v. Hargett*, 791 F.3d 684 (6th Cir. 2015) ........ 34, 35

*Hormel v. Helvering*, 312 U.S. 552 (1941). ...................................... 50, 51

*Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219 (6th Cir. 2011) ...................................................................... 53

*Jomaa v. United States*, 940 F.3d 291 (6th Cir. 2019) ............................ 11

*Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588 (6th Cir. 2014) ................ 52

*Kentucky v. Yellen*, 54 F.4th 325 (6th Cir. 2022) ................................... 17

*Kiser v. Reitz*, 765 F.3d 601 (6th Cir. 2014) .......................................... 17

*Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505 (6th Cir. 2006)......................39

*Laird v. Tatum*, 408 U.S. 1 (1972) ............................................. 15, 16, 26

*Lovely v. United States*, 570 F.3d 778 (6th Cir. 2009) ...........................11

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992)................... 12, 14, 15

*Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469 (2d Cir. 1999) ................................................................................... 40, 44

*Maryland v. King*, 567 U.S. 1301 (2012) .............................................57

*McCormick v. Miami Univ.*, 693 F.3d 654 (6th Cir. 2012) ....................11

*McKay v. Federspiel*, 823 F.3d 862 (6th Cir. 2016)........................ *passim*

*McLeod v. Providence Christian Sch.*, 408 N.W.2d 141 (Mich. Ct. App. 1987)................................................................................22

*McNeilly v. Land*, 684 F.3d 611 (6th Cir. 2012) ...................................53

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).....................39

*Michigan Dept. of Civil Rights ex rel. Forton v. Waterford Tp. Dept. of Parks & Recreation*, 387 N.W.2d 821 (Mich. 1986)...............19

*Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533 (6th Cir. 2010) ...................................................................................41

*Miller v. City of Wickliffe, Ohio*, 852 F.3d 497 (6th Cir. 2017)...............39

*Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272 (6th Cir. 1997).....24, 39

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977) ..................................................................................57

*Nken v. Holder*, 556 U.S. 418 (2009)....................................................56

*Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002)..................................40

*Our Lady of Guadalupe School v. Morrissey-Berry*, 140 S. Ct. 2049 (2020) ..................................................................................23

*Parsons v. United States Dep't of Just.*, 801 F.3d 701 (6th Cir. 2015) ........................................................................ 16, 17

*Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011 (D.C. Cir. 1991) .............38

*Platt v. Bd. of Comm'rs on Grievs. & Discipline of the Ohio Supreme Court*, 769 F.3d 447 (6th Cir. 2014)......................................53

*Plunderbund Media, LLC v. DeWine*, 753 F. App'x 362 (6th Cir. 2018) ..........................................................................27

*Porth v. Roman Cath. Diocese*, 532 N.W.2d 195 (Mich. Ct. App. 1995) ..........................................................................22

*Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343 (6th Cir. 2007) ..........................................................................11

*Priorities USA v. Nessel*, 860 Fed. Appx. 419 (6th Cir. 2021) ...............57

*Rouch World, LLC v. Dep't of Civil Rights,* 987 N.W.2d 501 (Mich. 2022) ............................................................... *passim*

*S. Glazer's Distribs. Of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844 (6th Cir. 2017) ....................................................52

*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) ............30, 31

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)..............................14

*Susan B. Anthony List v. Driehaus,* 573 U.S. 149 (2014)................17, 36

*Texas v. United States*, 523 U.S. 296 (1998) .........................................40

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985) .........40

*Thompson v. Dewine*, 959 F.3d 804 (6th Cir. 2020)...............................58

*Town of Chester, N.Y. v. Laroe Estates, Inc.*, ___ U.S. ___, 137 S. Ct. 1645 (2017) ................................................................15

*United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984)..................................................15, 16

*United States v. Hays*, 515 U.S. 737 (1995) ............................................ 15

*United States v. Miami Univ.*, 294 F.3d 797 (6th Cir. 2002) ................ 54

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) .................................... 55

*Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021 (6th Cir. 2022) ............................................................................ 35

*Warshak v. United States*, 532 F.3d 521 (6th Cir. 2008) ...................... 40

*Weishuhn v. Cath. Diocese*, 756 N.W.2d 483 (Mich. Ct. App. 2008). 22, 23

*White v. United States,* 601 F.3d 545 (6th Cir. 2010) ............................ 11

*Whole Woman's Health v. Jackson*, ___ U.S. ___, 142 S. Ct. 522 (2021) .................................................................................................... 26

*Younger v. Harris*, 401 U.S. 37 (1971) .......................................... 13, 26

*Younger v. Harris*, 402 U.S. 37 (1971) .......................................... 26, 40

**Statutes**

Mich. Comp. Laws § 37.2101 ............................................................... 1, 33

Mich. Comp. Laws § 37.2102 .................................................................... 22

Mich. Comp. Laws § 37.2102(1) ................................................................. 3

Mich. Comp. Laws § 37.2201(a) ............................................................... 19

Mich. Comp. Laws § 37.2103(i) .................................................................. 3

Mich. Comp. Laws § 37.2208 ................................................ 20, 35, 44, 47

Mich. Comp. Laws § 37.2301(a) ............................................................... 19

Mich. Comp. Laws § 37.2302 .................................................................... 19

Mich. Comp. Laws § 37.2302(a) ........................................................... 6, 32

Mich. Comp. Laws § 37.2401 .................................................................... 19

Mich. Comp. Laws § 37.2403.................................................35

Mich. Comp. Laws § 37.2601.................................................26

Mich. Comp. Laws § 37.2602...................................................4

Mich. Comp. Laws § 37.2602(c).............................................42

Mich. Comp. Laws § 37.2705.................................................19

Mich. Comp. Laws § 37.2705(1) ...............................19, 45, 58

Mich. Comp. Laws § 750.146.......................................*passim*

Mich. Comp. Laws § 750.147..............................20, 32, 43

**Other Authorities**

Mich. Admin. Code, R. 37.20.................................................20

28 U.S.C. § 1291 ...............................................................xi

**Rules**

Fed. R. Civ. P. 12(b)(1) ......................................................11

Mich. Admin. Rules, R. 37.20..............................................47

**Constitutional Provisions**

Mich. Const. 1963, Art. I, § 2 ..........................................3, 22

Mich. Const. 1963, Art. IV, § 27...........................................7

Mich. Const. 1963, Art. V, § 29 ...........................3, 22, 32, 57

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiffs-Appellants Sacred Heart of Jesus Parish, Jerry Hatley, Robin Hatley, Joseph Boutell, Renee Boutell, Peter Ugolini, and Katie Ugolini[1] (collectively, Plaintiffs) have requested oral argument. Defendants-Appellees believe that oral argument is unnecessary for the Court to decide the issues presented in this appeal of the District Court's well-reasoned opinion and that the issues raised in this appeal are resolved by established law. However, if the Court grants oral argument, Defendants request the opportunity to present argument.

---

[1] The individual Plaintiffs—the Hatleys, Boutells, and Ugolinis—will be referred to as Parents where necessary.

# JURISDICTIONAL STATEMENT

Defendants agree this Court generally has jurisdiction over appeals from final decisions of district courts under 28 U.S.C. § 1291. The District Court dismissed this case on August 22, 2023.  (Op. & Ord., R. 44, Page ID # 961; Judgment, R. 45, Page ID # 962.)  In doing so, the District Court also denied Plaintiffs' motion for a preliminary injunction.  (Op. & Ord., R. 44, Page ID # 961.)  Plaintiffs timely filed a notice of appeal, giving this Court appellate jurisdiction under 28 U.S.C. § 1291.  (Notice of Ap., R. 46, Page ID ## 963–964.)

# STATEMENT OF ISSUES PRESENTED

1. To establish standing, a party must show injury in fact, not just a generalized grievance against governmental conduct and, as for a First Amendment claim, a party must still show an injury that is actual and imminent, not just a subjective allegation of chilled speech. But Plaintiffs relied on mere speculation that, in the future, Sacred Heart may be investigated or prosecuted for practicing its religious beliefs under the Elliott-Larsen Civil Rights Act and Michigan's public accommodations law. Should this Court affirm the District Court's dismissal of the complaint?

2. The ripeness doctrine is designed to ensure that the jurisdiction of the federal courts is limited to actual cases and controversies, not premature, abstract disagreements that may not occur, and while ripeness is somewhat relaxed in the First Amendment context, there nevertheless must be a credible fear that the anticipated action will occur. The record established that none of Defendants have *ever* interfered with Sacred Heart's educational institution, publications, and employment decisions, let alone threatened to investigate or prosecute it, because of its religious beliefs. Should this Court affirm the District Court's dismissal of the complaint?

3. Preliminary injunctive relief "is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies' " and may be granted only upon a clear showing that the plaintiffs are entitled to such relief and proof that the circumstances clearly demand it. Plaintiffs offered only conjecture that Sacred Heart may someday be wronged, with no demonstration of any real, immediate danger of harm or that they were likely to succeed on the merits of their constitutional challenges. Should this Court affirm the District Court's denial of the motion for preliminary injunction?

## INTRODUCTION

This case exemplifies why the Supreme Court has reiterated that allegations of *possible* future constitutional violations, and a plaintiff's speculative fears alone, are insufficient to demonstrate Article III standing. The test does not change simply because a case may present significant constitutional questions.

Plaintiffs argue that any application of Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 *et seq.*, which protects against sexual orientation and gender identity discrimination, to them violates their religious freedoms. This fear is unfounded. Sacred Heart has not been the subject of any action by the Michigan Department of Civil Rights (MDCR) or the Michigan Civil Rights Commission (Commission). Nor have any similar religious entities been found to be in violation of the ELCRA since its recent expansion. There is also no evidence that MDCR or the Commission will fail to consider religious freedoms in any future investigations. In fact, the ELCRA *requires* consideration of those freedoms.

There is likewise no evidence that Michigan Attorney General Dana Nessel has taken any action to enforce the criminal provisions of

Michigan's Equal Accommodations Act (EAA) against any entity—let alone a religious entity. And that statute, too, requires consideration of other constitutional rights in its enforcement.

On these facts, the District Court correctly determined that neither act facially fails to recognize religious freedoms and thus the acts do not proscribe the activities in which Plaintiffs seek to engage. The court further concluded that Plaintiffs had not shown a threat of imminent enforcement of either act where there were simply no complaints against Sacred Heart or similar entities. The court thus concluded that Plaintiffs lacked standing and dismissed the complaint.

Because Michigan's civil rights laws already incorporate religious protections and acknowledge "religion" as a protected civil right, and where there is no evidence that Defendants have, or will, fail to consider religious freedoms when investigating or prosecuting a civil rights claim, this Court should affirm the dismissal of the complaint for lack of standing.

## COUNTER-STATEMENT OF THE CASE

This case arose after the Michigan Supreme Court held that the ELCRA's "because of sex" language prohibits discrimination based upon sexual orientation. *Rouch World*, *LLC v. Dep't of Civil Rights,* 987 N.W.2d 501, 519 (Mich. 2022).

### A.    A brief chronology of the recent progression of LGBTQ rights in Michigan.

**The Commission's Interpretive Statement.**

The ELCRA has long provided protection from discrimination based upon "sex" but, prior to its recent amendment, it did not expressly specify whether its "because of . . . sex" language included protection for individuals based upon sexual orientation or gender identity. *See* Mich. Comp. Laws §§ 37.2102(1), 37.2103(i).

On May 21, 2018, the Michigan Civil Rights Commission[2] adopted Interpretive Statement 2018-1, in which it concluded that "sexual orientation" and "gender identity" fall within the meaning of "sex" as

---

[2] The Commission was established by the Michigan Constitution of 1963 to carry out the guarantees against discrimination articulated in Article 1, § 2.  *See* Mich. Const. 1963, Art. I, § 2 and Art. V, § 29.  The Commission's duties are established by law.  *See* Mich. Comp. Laws § 37.2601 *et seq.*

used in the ELCRA.  (Compl., R. 1, ¶ 231, Page ID # 30.)  The

Commission relied on *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*,

884 F.3d 560 (6th Cir. 2018), in which this Court held Title VII's

"discrimination because of . . . sex" provision included protection for a

transgender Michigan woman.  (Sacred Heart's Prelim. Injunction Brf.,

R. 5, Page ID # 265.)  Accordingly, the Commission found "that

continuing to interpret the protections afforded by the phrase

'discrimination because of . . . sex' more restrictively by continuing to

exclude individuals for reasons of their gender identity or sexual

orientation would itself be discriminatory."  (*Id.*)

### *Rouch World, LLC, et al v. Dep't of Civil Rights (MDCR)*

*Rouch World* was brought by Rouch World, LLC, a wedding venue

that denied wedding venue services for a same sex wedding, and

Uprooted Electrolysis, LLC, which denied hair removal services to a

transgender woman.[3] *Rouch World*, 987 N.W.2d at 505–506.  Both

entities asserted that providing services would violate their religious

---

[3] Rouch World and Uprooted Electrolysis were both the subject of
administrative complaints filed with the MDCR due to allegations of
failing to provide public accommodations.  *See* Mich. Comp. Laws
§ 37.2602.

beliefs.  In December 2020, the trial court held that discrimination because of sex under the ELCRA includes discrimination because of an individual's "gender identity" and granted relief in favor of the MDCR with regard to Uprooted Electrolysis's claim.  *Id.*  However, on the basis of stare decisis, the court denied relief as to the sexual orientation claim.  *Id.*

Regarding Rouch World and Uprooted Electrolysis' First Amendment free exercise of religion claim, the trial court concluded that the issue had not "been sufficiently briefed to resolve at this juncture."  (*Rouch World, LLC v. Dep't of Civ. Rights*, unpublished order of the Court of Claims, R. 23–1, Page ID # 416.)  Uprooted Electrolysis did not appeal the gender identity ruling.

The Michigan Supreme Court granted the MDCR's bypass application challenging the trial court's opinion that ELCRA's "because of sex" provision did not encompass discrimination because of an individual's sexual orientation.  *Rouch World,* 987 N.W.2d at 506.  On July 28, 2022, the Michigan Supreme Court, relying on *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020), held that discrimination on the basis of sexual orientation is discrimination because of sex, and that the

denial of "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" at a "place of public accommodation or public service" on the basis of sexual orientation is discrimination "because of . . . sex" in violation of § 302a of the ELCRA, Mich. Comp. Laws § 37.2302(a). *Id.* at 519. The court did not address "[w]hether enforcement under the ELCRA for sexual-orientation and gender-identity discrimination would violate [the] plaintiffs' federal and state constitutional religious liberty protections," because that had "not yet been adjudicated below" and was "not currently before" the court. *Rouch World,* 987 N.W.2d at 506 n.5. *Rouch World* was then remanded to the trial court for further proceedings. *Id.*

On January 27, 2023, the trial court dismissed the case by stipulation of the parties, leaving the MDCR to process the administrative complaints previously filed against Rouch World and Uprooted Electrolysis.[4]

---

[4] The *Rouch World* Court of Claims Register of Actions is publicly available at [RegisterOfActions (michigan.gov)](https://michigan.gov), (accessed December 15, 2023).

**The ELCRA is amended include sexual orientation and gender identity and expression as protected categories**

On March 16, 2023, Michigan Governor Gretchen Whitmer signed into law Public Act 6 of 2023, amending the ELCRA to expressly include sexual orientation and gender identity and expression as protected categories.[5] These amendments will become effective on February 13, 2024. *See* Mich. Const. 1963, Art. IV, § 27. In the interim, the *Rouch World* decisions continue to govern interpretation of the term "sex" as used in the ELCRA.

**B.** **Procedural history**

**Sacred Heart and Sacred Heart Academy's claims**

After the Michigan Supreme Court's decision in *Rouch World*, Plaintiffs sued Attorney General Nessel, John E. Johnson, the Executive Director of the MDCR, and Commission members Portia L. Roberson, Zenna Faraj Elhasan, Gloria E. Lara, Regina Gasco-Bentley,

---

[5] Public Act 6 of 2023, is available at http://legislature.mi.gov/documents/2023-2024/publicact/pdf/2023-PA-0006.pdf, (accessed December 15, 2023).

Anupama Kosaraju, Richard Corriveau, and David Worthams, and Luke Londo in their official capacities.[6]

Sacred Heart is a nonprofit corporation operating the Sacred Heart Academy, where the Plaintiff Parents' children are enrolled. (Compl., R. 1, Page ID ## 4–5.)  Sacred Heart is a parish-run Catholic school.  (*Id.*, Page ID ## 5–6.)  It alleged that enforcement of the ELCRA's accommodations, employment, notice and publication, and educational institutions provisions, as well as the publications clause in the EAA, violate the First and Fourteenth Amendments by infringing on its religious beliefs.  (*Id.,* Page ID ## 4–5, 51–63.)  Sacred Heart sought declaratory and injunctive relief as to the disputed ELCRA and EAA provisions.  (*Id.*, Page ID ## 68–69.)  Additionally, it moved to preliminarily enjoin enforcement of the challenged statutes.  (Sacred Heart's Prelim. Injunction Mot., R. 4, Page ID # 243.)

**The Parents' claims**

The Parents elected to send their children to a Catholic school for a Catholic education.  (Compl., R. 1, Page ID # 2.)  Parents similarly

---

[6] Defendants Gasco-Bentley and Kosaraju are no longer serving on the Commission.  *See* https://www.michigan.gov/mdcr/commission/meet, (accessed December 15, 2023.)

bring two claims alleging the ELCRA and the EAA violate their First and Fourteenth Amendment rights. (*Id.*, Page ID ## 64–67.) First, they claim the ELCRA interferes with and threatens to interfere with their rights to control their children's education by depriving them of their right to send their children to a Catholic school to be educated in the Catholic faith. (*Id.,* Page ID ## 64–66.) Second, they claim the ELCRA violates their right to exercise their Catholic faith by permitting them to raise their children in the faith. (*Id.*, Page ID # 67.)

The Parents joined Sacred Heart in seeking declaratory and injunctive relief as to the disputed ELCRA and EAA provisions. (*Id.*, Page ID ## 68–69; Sacred Heart's & Parents' Prelim. Injunction Mot., R. 4, Page ID ## 243.)

**The District Court dismisses the complaint**

On August 22, 2023, the District Court granted Defendants' motion to dismiss, concluding that Plaintiffs failed to "plausibly" allege facts demonstrating that (1) its intended conduct was proscribed by either the ELCRA or the EAA, and (2) that they were subject to "a credible threat of prosecution under either state law." (Op. & Ord., R. 44, Page ID ## 940–61.)

The District Court reasoned that both of Michigan's anti-discrimination statutes "do not 'arguably' provide that religious freedoms will not be considered." (*Id.*, Page ID # 870.)  Rather, the ELCRA and the EAA in fact "provide that they will be interpreted in accordance with other applicable laws." (*Id.*, Page ID # 958.)  The District Court found that the "ELCRA on its face and under caselaw is construed in conjunction with other legal rights." (*Id.*, Page ID ## 956–57).  And even assuming Sacred Heart's proposed conduct is proscribed by Michigan law, the court held that allegations of "subjective chill are not an adequate substitute for a claim of a specific present objective harm or a threat of a specific harm." (*Id.*, Page ID # 951.)  The District Court found Plaintiffs' allegations of chill were inadequate where they failed to meet the factors set forth in *McKay v. Federspiel*, 823 F.3d 862 (6th Cir. 2016).  The District Court thus concluded that Plaintiffs had not "demonstrated Article III standing sufficient to invoke federal-court jurisdiction." (Op. & Ord., R. 44, Page ID # 961.)  As a result, the District Court opined "any decision from [it] regarding how the statutes might apply to Plaintiffs would be advisory." (*Id.*)

## STANDARDS OF REVIEW

This Court reviews a district court's dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing *de novo*. *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 348 (6th Cir. 2007) (internal citation omitted); *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Lovely v. United States*, 570 F.3d 778, 781 (6th Cir. 2009)). Because Plaintiffs' "suit was dismissed at the pleading stage, [the Court] must accept as true all material factual allegations of the complaint" and construe them in Plaintiffs' favor. *Glenn v. Holder,* 690 F.3d 417, 420 (6th Cir. 2012) (quoting *White v. United States,* 601 F.3d 545, 551 (6th Cir. 2010)).

This Court has applied an abuse of discretion standard when evaluating a court's denial of a request for supplemental briefing. *AES-Apex Emp. Servs., Inc. v. Rotondo*, 924 F.3d 857, 866–67 (6th Cir. 2019); *Jomaa v. United States*, 940 F.3d 291, 299 (6th Cir. 2019). When this Court reviews for abuse of discretion, it will reverse only when it "is firmly convinced that a mistake has been made." *Bush v. Rauch*, 38 F.3d 842, 848 (6th Cir. 1994).

Finally, when reviewing a preliminary injunction with First Amendment implications, the review is *de novo*. *Cnty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 485 (6th Cir. 2002) (internal citation omitted).

## SUMMARY OF ARGUMENT

As the District Court correctly found, the requisite injury in fact required to establish standing must be concrete and particularized, and actual or imminent. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). In the pre-enforcement context, an injury based on a perceived threat of future enforcement of a law is sufficient only if a plaintiff seeks to engage in conduct that the law arguably proscribes, and the plaintiff shows a credible threat that the government will enforce it against the plaintiff.

But here, both of Michigan's anti-discrimination laws, the ELCRA and the EAA, must be interpreted in accordance with other applicable laws, which encompasses free exercise of religion, and neither statute facially fails to recognize religious freedoms like those asserted by Plaintiffs. Thus, the conduct in which Plaintiffs allegedly seek to engage, such as advertising for or hiring only employees that share the

same religious beliefs, is not proscribed by Michigan's laws.  Further, Plaintiffs failed to show a credible threat of enforcement of the ELCRA or the EAA by Defendants where there is no history of enforcement or a threat of enforcement of either statute against Sacred Heart or any similar religious entity.

In the alternative, Plaintiffs' claims were subject to dismissal based on ripeness.  Like standing, ripeness requires that a plaintiff show a credible fear of enforcement in order to bring a pre-enforcement claim.  But Plaintiffs did not sufficiently allege any credible threat of imminent investigation, prosecution, or any other enforcement action against Sacred Heart under either the ELCRA or the EAA sufficient to establish their claims are ripe.  Rather, Sacred Heart voluntarily elected to chill its own speech and alter its own business practices—but a chilling effect alone is insufficient.  *Younger v. Harris*, 401 U.S. 37, 51 (1971).  Moreover, for a claim to be ripe for review, the facts of the case must be sufficiently developed.  But here, the facts are not developed as to how Defendants will interpret and apply either of the statutes to Sacred Heart—a court would be left to guess at such matters.

Finally, the District Court properly disposed of Plaintiffs' motion for a preliminary injunction where their failure to allege standing deprived the court of jurisdiction to consider motion. But, even if this Court were to reverse the decision as to standing, the Court should remand to the District Court for consideration in the first instance of whether Plaintiffs can satisfy the factors for granting such extraordinary relief.

## ARGUMENT

## I. The District Court correctly held that Plaintiffs did not have standing to maintain their claims.

### A. Standing requires a concrete, actual or imminent harm, not a generalized grievance against government conduct or a mere subjective allegation of chill.

To establish standing, Plaintiffs had to show three things: (1) that it suffered an injury in fact, (2) caused by Defendants, (3) that a judicial decision could redress. *Lujan*, 504 U.S. at 560–561. The burden of establishing standing rests with Plaintiffs. *Id*. at 561. And it "bears the burden of showing that [it] has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). *See also Town of Chester, N.Y. v. Laroe Estates, Inc.*, ___ U.S. ___, 137 S. Ct.

1645, 1650 (2017) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.") (citation omitted). Further, "Supreme Court and Sixth Circuit caselaw have consistently held that 'the court must determine whether standing exists at the time of the filing of the complaint only.'" *Graveline v. Benson*, 992 F.3d 524, 532 (6th Cir. 2021) (cleaned up).

For purposes of standing, an injury in fact means an "invasion of a legally protected interest which is (a) 'concrete and particularized,' and (b) 'actual or imminent.'" *Daunt v. Benson,* 956 F.3d 396, 417 (6th Cir. 2020) (quoting *Lujan,* 504 U.S. at 560). In establishing an injury in fact, "[a] generalized grievance against governmental conduct is insufficient to confer standing upon a party." *Id.* at 566 (citing *United States v. Hays*, 515 U.S. 737, 743 (1995)). For this reason, plaintiffs bringing First Amendment claims "must present more than 'allegations of a subjective chill. There must be a 'claim of specific present objective harm or a threat of specific future harm.'" *Bigelow v. Virginia,* 421 U.S. 809, 816–17 (1975) (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)). *See United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984) ("All of the Supreme Court cases

employing the concept of 'chilling effect' involve situations in which the plaintiff has unquestionably suffered some concrete harm (past or immediately threatened) apart from the 'chill' itself."). *See also Parsons v. United States Dep't of Just.,* 801 F.3d 701, 710 (6th Cir. 2015) (noting that "imminent" means " 'certainly impending,' in contradistinction to 'allegations of possible future injury' ") (quoting *Clapper v. Amnesty Int'l.*, 568 U.S. 398, 409 (2013). Further, the "chill" on First Amendment expression normally stands as the "*reason* why the governmental imposition is invalid rather than as the harm which entitles [a party] to challenge it." *Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563, 566 (6th Cir. 1995) (citing *United Presbyterian Church in the U.S.A.,* 738 F.2d at 1378). "Allegations of a subjective 'chill' are not an adequate substitute for a claim of a specific present objective harm or a threat of specific future harm[.]" *Laird*, 408 U.S. at 13–14.

## B. Plaintiffs failed to sufficiently allege an injury to support pre-enforcement review.

"In a pre-enforcement challenge, whether the plaintiff has standing to sue often turns upon whether [it] can demonstrate an

'injury in fact' before the state has actually commenced an enforcement proceeding against [it]."  *Kiser v. Reitz,* 765 F.3d 601, 607 (6th Cir. 2014).  The Supreme Court has recognized that "[a]n allegation of future injury may" satisfy the injury-in-fact requirement if the alleged "threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.' "  *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014) (quoting *Clapper*, 568 U.S. at  408–09, 413–14, n.5).  *See also Parsons,* 801 F.3d at 710.

The test for whether an injury is sufficiently imminent to support standing requires Plaintiffs to establish (1) an intent to engage in a course of conduct arguably affected with a constitutional interest, (2) that this course of conduct was arguably proscribed by the ELCRA and the EAA, and (3) that if Plaintiffs pursued such a course of conduct, there was a credible threat that Defendants would seek to enforce the ELCRA or the EAA against them.  *Kentucky v. Yellen*, 54 F.4th 325, 336 (6th Cir. 2022) (citing *Susan B. Anthony List*, 573 U.S. at 161–64).

Based on the allegations in their complaint, Sacred Heart and the Parents sufficiently alleged they intended to engage in a course of conduct arguably affected with a constitutional interest.  But they failed

to sufficiently allege that course of conduct was arguably proscribed by the challenged statutes, and that a credible threat of prosecution existed at the time the complaint was filed. *Graveline*, 992 F.3d at 532.

### 1. Sacred Heart's intended conduct is not arguably proscribed by the ELCRA or the EAA.

On appeal, as they did below, Plaintiffs offer a parade of possibilities based on their "highly speculative fear" and their own interpretation of the ELCRA and the EAA to argue that Sacred Heart would be required to accommodate the use of pronouns, bathrooms, locker rooms, uniforms, and sports teams irrespective of biological sex; restrict hiring, recruiting, disciplining, and retaining employees who share its religious beliefs; prohibit publishing or communicating certain statements; lie to students about its religious beliefs and views on sex and gender identity; and restrict recruiting and discipling students in accord with its religious policies. (Appellant's Br., Doc. 21, Page ID # 34.) But the District Court correctly held that Plaintiffs did not plausibly allege that such conduct is arguably proscribed by the ELCRA or the EAA. (Op. & Ord., R. 44, Page ID # 950.) That is because the

ELCRA and the EAA do not proscribe activity otherwise protected by the First Amendment.

Sacred Heart, as a Catholic school, may be subject to the ELCRA as an employer, Mich. Comp. Laws § 37.2201(a), as an educational institution, Mich. Comp. Laws § 37.2401, and as a place of public accommodation to the extent its services are extended to the public, Mich. Comp. Laws § 37.2301(a).  But the ELCRA does not facially proscribe Sacred Heart (or the Parents) from exercising constitutionally protected religious rights.  This is because the ELCRA prohibits discrimination by a place of public accommodation "[e]xcept where permitted by law," which includes constitutional law.  Mich. Comp. Laws § 37.2302; *Mich. Dep't of Civil Rights ex rel. Forton v. Waterford Twp. Dep't of Parks & Recreation*, 387 N.W.2d 821 (Mich. 1986).  And the construction provision applicable to all articles of the ELCRA, including Article IV, generally provides that it "shall not be construed as preventing . . . securing civil rights guaranteed *by law* other than the civil rights set forth in this act."  Mich. Comp. Laws § 37.2705(1) (emphasis added).  Although the term "law" in this section does not appear to have been interpreted, it is reasonable to conclude that it, like

§ 2302, includes constitutional law.  *See, e.g., Champion v. Secretary of State*, 761 N.W.2d 747, 752 (Mich. App. 2008) ("[T]he use of the term 'law' here includes constitutional provisions that would carve out a religion-based exception to the social security number requirement."). Further, in the employment context, discrimination based on a protected category is permissible where it is a "bona fide occupational qualification reasonably necessary to the normal operation of the business[.]"  Mich. Comp. Laws § 37.2208.[7]  These provisions requiring the ELCRA to be interpreted in conjunction with other laws, including the constitution, were not removed from the statute by the recent amendments.  (*See* Memorandum Op. & Ord., R. 45, Page ID # 1198.)

The EAA, on the other hand, is not applicable to Sacred Heart as a private educational institution.  *See* Mich. Comp. Laws §§ 750.146, § 750.147.[8]  The EAA specifies that it applies to "public educational institutions."  Mich. Comp. Laws § 750.146.  Sacred Heart is a private

---

[7] If Sacred Heart was unsure regarding the application of these exceptions to its activities, it could have requested a declaratory ruling from the Commission before filing suit.  Mich. Admin. Code, R. 37.20.

[8] It is also unclear whether the EAA's prohibition of discrimination based on "sex" includes sexual orientation and gender identity as no Michigan court has addressed the EAA's specific language.

school. (Compl., R. 1, Page ID # 29.) Regardless, like the ELCRA, the EAA's nondiscrimination provision is "subject [ ] to the conditions and limitations *established by law*[.]" Mich. Comp. Laws § 750.146 (emphasis added). There is no reason to presume that the word "law" as used in the EAA does not also include constitutional law.

Therefore, as the District Court determined, while Michigan undertakes appropriate efforts to ensure its citizens are not subjected to discrimination, its laws recognize there may be exceptions to these prohibitions created by other laws, including the constitution. (Op. & Ord., R. 44, Page ID # 948-49.) And while these provisions may not be as express as Plaintiffs desire, statutory exemptions are not necessarily required for the protection of constitutional rights. *See Emp't Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872, 890 (1990) ("[T]o say that a non- discriminatory religious-practice exemption is permitted, or even that it is desirable, is not to say that it is constitutionally required, and that the appropriate occasions for its creation can be discerned by the courts.").[9]

---

[9] Michigan's Constitution and its anti-discrimination laws recognize "religion" as both a protected constitutional and civil right. *See* Mich.

Moreover, as the District Court observed, Michigan caselaw confirms the consideration of religious freedoms when balancing civil rights protections.  (Op. & Ord., R 44, Page ID ## 950, 956–57.)[10]  There are numerous decisions demonstrating Michigan considers religious freedoms and provides exemptions for religious practice under the ELCRA.  *See e.g., Porth v. Roman Cath. Diocese*, 532 N.W.2d 195, 200 (Mich. Ct. App. 1995); *Assemany v. Archdiocese of Detroit*, 434 N.W.2d 233, 238 (Mich. Ct. App. 1988); *Weishuhn v. Cath. Diocese*, 756 N.W.2d 483, 488–89, 500 (Mich. Ct. App. 2008); *McLeod v. Providence Christian Sch.*, 408 N.W.2d 141, 151 (Mich. Ct. App. 1987*)*.  As the District Court noted, Michigan courts have determined that the ministerial exception, a "nonstatutory, constitutionally compelled exception to the application of employment discrimination and civil rights statutes to religious institutions and their 'ministerial' employees," "generally bars inquiry into a religious institution's underlying motivation for a contested

_____

Const. 1963, Art. I, § 2, Art. V, § 29, Mich. Comp. Laws § 37.2102, and Mich. Comp. Laws § 750.146.

[10] Michigan's Constitution and anti-discrimination laws recognize "religion" as both a protected constitutional and civil right.  *See* Mich. Const. 1963, Art. I, § 2, Art. V, § 29, Mich. Comp. Laws § 37.2102, and Mich. Comp. Laws § 750.146.

employment decision." *Weishuhn*, 756 N.W.2d at 486. These employer-related cases demonstrate the ELCRA is—indeed must be—interpreted in conjunction with the First Amendment protections afforded to religious entities.[11]

Notwithstanding the exemptions provided for by statute and in Michigan law, Plaintiffs appear to argue on appeal, as they did below, that any complaint filed against Sacred Heart, in and of itself, violates their religious freedoms, despite courts having considered religious freedoms in conjunction with Michigan's anti-discrimination provisions. There is no authority to support a religious entity's religious rights provide it with complete immunity from suit, investigation, etc., as religious freedoms must be weighed against governmental interests based on the particular facts of each case. *Assemany,* 434 N.W.2d at 236–37. The Supreme Court has expressly held that "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the

---

[11] In *Our Lady of Guadalupe School v. Morrissey-Berry*, 140 S. Ct. 2049, 2060 (2020), the Supreme Court observed that "[a]mong other things, the Religion Clauses protect the right of churches and other religious institutions to decide matters of faith and doctrine without government intrusion."

law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Emp't Div., Dep't of Human Res. of Ore.,* 494 U.S. at 879 (cleaned up).

Here, the District Court correctly held that neither the ELCRA nor the EAA facially fails to recognize religious freedoms like those asserted by Sacred Heart. (Op. & Ord., R. 44, Page ID # 958.) And the "mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997) (citation omitted).

The Parents' claim was appropriately dismissed as well. Their claim is wholly dependent upon a finding that the ECLRA and the EAA proscribe the conduct in which Sacred Heart desires to engage. But, as the District Court determined, the Parents do not argue that either the ELCRA or the EAA apply to them in their capacities as parents of children attending Sacred Heart or as parishioners, but otherwise argue that these laws "indirectly regulate[ ]" their freedom. (Op. & Or., R. 44, Page ID # 946) (quotation marks omitted). In fact, on appeal, the Parents note that 14 of their children currently attend Sacred Heart's

school. (Appellants' Br., Doc. 21, Page ID ## 21–22.)  The District Court correctly held that the Parents did not plausibly allege facts that such conduct is proscribed by Michigan's anti-discrimination laws. (Op. & Ord., R. 44, Page ID # 950.)

### 2. Plaintiffs failed to sufficiently allege a credible threat of enforcement under the ELCRA or the EAA.

Again, to avoid dismissal, Plaintiffs had to demonstrate they had standing at the time they *filed* their complaint.  *Graveline*, 992 F.3d at 532.  Even so, since the issuance of the interpretive statement five years ago and the *Rouch World* decisions over a year ago, Plaintiffs still cannot identify any pending complaint, investigation, charge or prosecution against Sacred Heart.  Thus, Plaintiffs' claims that Sacred Heart faces a credible threat of enforcement warranting pre-enforcement review are wholly dependent upon speculation that (1) a complaint will be filed against Sacred Heart, and (2) how the statutory language will be applied or if it will be applied against Sacred Heart. Plaintiffs simply presume without any credible evidence that Defendants will not appropriately consider applicable religious exemptions if a complaint is filed against Sacred Heart.

It is important to recognize that the Attorney General has no statutory authority to enforce the ELCRA, but as a prosecutor she can enforce the criminal provisions of the EAA. Conversely, the MDCR and Commission Defendants have express authority to enforce the ELCRA, Mich. Comp. Laws § 37.2601 *et seq.*, but no authority to enforce the EAA as a criminal statute. Plaintiffs must establish standing as to each statute and Defendant.

Again, "allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm" for purposes of establishing an injury-in-fact. *Laird,* 408 U.S. at 13–14. The "chilling effect" associated with a potentially unconstitutional law being " 'on the books' " is insufficient to "justify federal intervention" in a pre-enforcement action. *Whole Woman's Health v. Jackson*, ___ U.S. ___, 142 S. Ct. 522, 538 (2021) (quoting *Younger*, 401 U.S. at 51). But a credible threat of enforcement may exist where a plaintiff alleges a subjective chill on protected speech *and* can point to indicators of imminent enforcement, such as those discussed in *McKay v. Federspiel*, 823 F.3d at 869. *Fisher v. Thomas*, 52

F.4th 303, 307 (6th Cir. 2022).  *See also Plunderbund Media, LLC v. DeWine*, 753 F. App'x 362, 366–67 (6th Cir. 2018).

In *McKay*, this Court identified factors to determine whether a threat of enforcement is credible: (1) a history of past enforcement against the plaintiffs or others; (2) enforcement warning letters sent to the plaintiffs regarding their specific conduct; (3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing members of the public to initiate enforcement actions; and (4) the defendants refusal to disavow enforcement of the challenged statute against a particular plaintiff.  *McKay*, 823 F.3d at 869.  Some combination of these factors is required.  *Id.*

Here, even assuming Plaintiffs plausibly alleged a subjective chill, as the District Court determined, the *McKay* factors did not weigh in their favor.  (Op. & Ord., R. 44, Page ID #952–59.)

### a. There is no history of past enforcement of the ELCRA or EAA against Sacred Heart.

Regarding a history of past enforcement, there is no dispute that no Defendant has taken any action to enforce the ELCRA against Sacred Heart either before or after the filing of its complaint.  Likewise,

at the time Plaintiffs filed their complaint, no Defendant had taken any action to enforce the law against a similarly situated religious entity based on the entity's intent to engage in conduct similar too that proposed by Sacred Heart.[12]

This makes sense because Sacred Heart filed its complaint shortly after the *Rouch World* decision—before its effect had any time to percolate. And recall that *Rouch World* left unanswered how its expansion of the rights protected by the ELCRA intersected with religious freedoms. The MDCR and Commission Defendants have yet to consider or apply the ELCRA's protections from discrimination based on sexual orientation and gender identity to a complaint against an entity like Sacred Heart and assess First Amendment religious protections. Plaintiffs' speculation that Defendants will apply the ELCRA in an unconstitutional manner is just that—speculation. *See Doe v. Univ. of Mich.*, 78 F.4th 929, 944 (6th Cir. 2023) (noting "the Supreme Court has averred its 'reluctan[ce] to endorse standing

---

[12] While Sacred Heart has also filed a motion asking this Court to allow it to supplement the record to include information regarding other complaints filed with the MDCR (Doc. 22-1), those cases do not involve similar entities, and standing is to be evaluated at the time of the filing of the complaint. *Graveline*, 992 F.3d at 532.

theories that require guesswork as to how independent decisionmakers will exercise their judgment' ") (quoting *Clapper*, 568 U.S. at 413).

Not surprisingly then, the District Court observed that Plaintiffs did not cite any Michigan cases interpreting the ELCRA as prohibiting a religious employer who meets the bona fide occupational qualification criteria from asking prospective employees about whether they can follow and effectively communicate certain beliefs; seeking, recruiting, and hiring employees who agree with certain religious beliefs; or posting employment opportunities that indicate a desire to hire employees who share certain beliefs. (Op. & Ord., R. 44, Page ID # 955.)

Further, as the District Court correctly determined, Attorney General Nessel has not sought at any time, before or after the complaint, to enforce the EAA against Sacred Heart or another private, religious educational institution, or any other religious entity. (*Id.*) Even assuming the EAA applies to Sacred Heart, there is no evidence of *any* past criminal enforcement of the statute.

Plaintiffs simply did not allege any history of past enforcement of the ELCRA or the EAA by the Defendants or their predecessors in a manner relevant to the claims made here.

The cases cited by Plaintiffs do not strengthen their claims. For example, in *Block v. Canepa*, 74 F.4th 400, 409–11 (6th Cir. 2023), unlike the ELCRA or the EAA, Ohio's statute proscribed the very conduct in which the plaintiff wished to engage, and Ohio had a history of enforcement of that statute for the same, specific conduct. But here, Plaintiffs identified no evidence of past enforcement against a religious entity for the conduct in which Sacred Heart wished to engage, and perhaps most importantly, there was no indication in *Block* that Ohio's statute requires consideration of other laws. The ELCRA, however, on its face and as applied, and the EAA must be construed in conjunction with other laws. (*Id.*) As the District Court concluded, the *Block* case was "not a good fit." (Memorandum Op. & Ord., R. 44, Page ID # 956.)

Likewise, *Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019), is distinguishable. *Speech First* involved a facial challenge to definitions of bullying and harassment in a university policy and involved a response team's actions that were found to have constituted

an "implicit threat of punishment and intimidation to quell speech." *Id.* at 765. The conduct at issue, bullying and harassment, *were* the explicit conduct the university policy prohibited. Unlike *Speech First*, Plaintiffs' complaint did not identify a religious entity subject to an adverse action—by any Defendant—because of conduct in which it intended to engage. (*Id.*)

### b. There are no non-speculative threats of enforcement of the ELCRA or EAA.

Turning to the threat of enforcement factor, no warning letters or threats of enforcement have been issued or made to Sacred Heart by any of Defendants under either statute. Plaintiffs failed to allege facts demonstrating that any Defendants were poised to initiate an enforcement action against Sacred Heart.

Plaintiffs' reliance upon amicus briefs joined by the Attorney General or a resolution passed by the Commission on behalf of LGBTQ+ anti-discrimination efforts do not show a "clear threat of prosecution" against Sacred Heart. Again, the Attorney General does not enforce the ELCRA, and there is no history of criminal enforcement of the EAA by her or any previous Attorney General. (Op. & Ord., R. 44, Page ID

# 955.)  Further, the Commission's enforcement of the ELCRA is pursuant to constitutional and statutory mandate.  *See* Mich. Const. 1963, Art. V, § 29.  The fact that the Commission is generally charged with prohibiting discrimination does not mean it will not consider a religious entity's constitutionally protected religious freedoms, as it has done in various BFOQ approvals.

### c.   The provisions of the ELCRA and EAA do not make enforcement against Sacred Heart easier or more likely.

With regard to the third *McKay* factor, the District Court concluded that while private individuals are statutorily empowered to file an administrative complaint against Sacred Heart under the ELCRA, the ELCRA also provides that such a complaint may not be premised on discrimination that is "permitted by law."  Mich. Comp. Laws § 37.2302(a).  (Op. & Ord., R. 44, Page ID # 957.)  Further, while the civil remedies of the EAA may be enforced by private individuals, Mich. Comp. Laws § 750.147, that can only be done by filing a lawsuit, a higher bar than an administrative process.  Likewise, its criminal penalties can only be enforced through a criminal prosecution in a court

of law.  Regardless, both the ELCRA and the EAA expressly provide

that they will be interpreted in accordance with other applicable laws.

> **d.** **The inability to disavow enforcement of the ELCRA or EAA does not weigh in favor of standing here.**

Finally, Plaintiffs rely heavily upon Defendants' inability to

disavow enforcement of the ELCRA or EAA.  But this reliance is

misplaced.

First, disavowal is not a requirement for a finding of lack of

standing.  *McKay* requires that a combination of the factors be met.

*McKay*, 823 F.3d at 869.  Even if the "disavowal" factor weighs in favor

of Plaintiffs, the others plainly do not.  And second, Defendants, as state

officers, cannot generally disavow application of the ELCRA and the

EAA (to the extent it even applies here) where the statutes broadly

prohibit discrimination.  Mich. Comp. Laws, § 37.2101, *et seq.*; Mich.

Comp. Laws § 750.146.

While entities asserting a religious freedom may be exempted

from the statutory prohibitions as permitted by law, religious

exemptions are fact dependent.  It would be impossible for Defendants

to disavow application of statutes as broad as the ELCRA to any

religious entity where the religious freedom inquiry is fact dependent. The District Court agreed. (Op. & Ord., R. 44, Page ID # 958) (citing to *Davis v. Colerain Twp., Ohio*, 51 F.4th 164, 174 (6th Cir. 2022) (determining that the fact that the police department had not "disavowed enforcement" of its Facebook Rule "does nothing to show that [the plaintiff] plans to engage in speech that might arguably fall within the rule").)

Plaintiffs alleged no facts or evidence demonstrating that their religious freedoms will be denied where the ELCRA and the EAA expressly provide they are to be construed with other laws; and it is speculative to anticipate that Defendants will pursue a claim or charge against Sacred Heart. Plaintiffs cite to cases in support of pre-enforcement standing that are not on point. Rather, the cases involve statutes that proscribe very specific conduct, which courts found created a credible threat.

For example, in *Green Party of Tenn. v. Hargett,* 791 F.3d 684, 690 (6th Cir. 2015), the statute specifically required a minor political party to file an affidavit that it did not advocate the overthrow of local, state, or national governments by force or violence before its nominees are

placed on the ballot.  The statute proscribed specific conduct applicable to specific entities, and the state refused to disavow.  *Id.* at 696.

Here, the acts broadly prohibit discrimination, but the statutes do not specify these prohibitions apply to religious entities regardless of the constitutional freedoms of which they may avail themselves.  The ELCRA provides that religious entities have an exemption in the employment context.  Mich. Comp. Laws § 37.2208.  And religious educational institutions have an exemption permitting admission of students based upon religion.  Mich. Comp. Laws § 37.2403.  The ELCRA also specifies it is applicable, as to public accommodations, "except where permitted by law."  Mich. Comp. Laws § 37.2208.  The EAA's provisions are also "subject [ ] to the conditions and limitations established by law."  Mich. Comp. Laws § 750.146.  As a result, this case is unlike *Hargett.*

Similarly, *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021 (6th Cir. 2022), is also distinguishable.  There, the statute "explicitly ban[ned]" internet ordained ministers from solemnizing a marriage, which is the very conduct in which the plaintiffs sought to engage.  *Id.* at 1034.  Neither the ELCRA nor the

EAA contain a similar explicit ban on the activities at issue in this case. Rather, the statutes generally proscribe discrimination *unless permitted by law.*

When taken together, the *McKay* factors do not weigh in favor of Plaintiffs. As a result, the District Court properly determined that Plaintiffs failed to show a credible threat of enforcement. For the same reasons, Plaintiffs failed to show a "substantial risk" or harm. *Susan B Anthony List,* 573 U.S. at 158 (cleaned up).

While Plaintiffs argue on appeal that Michigan aggressively enforces its civil rights laws, and, as a result, Sacred Heart faces a future threat of enforcement, that inquiry is too broad. The issue is whether Defendants will fail to consider established religious freedoms in applying Michigan's civil rights laws to Sacred Heart or similar entities. The fact that the MDCR may investigate an administrative complaint or bring a charge of discrimination based on sexual orientation or gender identity against a secular entity or one that does not claim a religious exemption is irrelevant to Plaintiffs' claims. Defendants have not denied that they have interpreted the ELCRA to include protection for gender identity and sexual orientation. But the

issue is whether, in the application of this protection, Defendants have or will refuse (or there is a substantial risk that they will refuse) to consider religious freedoms—which they have not and will not because they cannot do so.

Finally, Plaintiffs' concerns about Defendants' position or representations regarding possible limitations to religious freedoms are also too broad. Plaintiffs erroneously intimate that Defendants are prosecuting religious entities who declined to provide services due to religious beliefs. But the Attorney General has not brought any criminal charges against a religious entity under the EAA. To the extent that the MDCR has administrative complaints from citizens, the District Court properly found that the scope of an investigation, any determination that actionable discrimination occurred, and any determination regarding grounds to issue a charge is dictated by the facts and applicable laws, including constitutional law which, again, the ELCRA incorporates. (Op. & Ord., R. 44, Page ID ## 954–55, n.5.) Plaintiffs alleged no facts or evidence suggesting that the MDCR will not consider religious freedoms in the course of an administrative proceedings.

There is no First Amendment violation "in the absence of some actual or threatened imposition of governmental power or sanction." *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1015 (D.C. Cir. 1991). Here, Plaintiffs have not shown that Sacred Heart faces imminent investigation or prosecution under the ELCRA or the EAA, or that it has been threatened with such actions. Further, both acts are expressly to be construed with other laws, which includes religious protections. On these facts, Plaintiffs failed to sufficiently allege an actual or imminent injury traceable to any action of Defendants. This Court should thus affirm the District Court's dismissal for lack of standing.

## II.   Plaintiffs' claims are not ripe for review because they have not demonstrated a credible threat of enforcement of the ELCRA or the EAA.

Alternatively, should this Court determine that Plaintiffs possess the requisite standing, the District Court's decision to dismiss should be affirmed where the claims are not ripe. In its opinion, the District Court did not separately rule on ripeness. (Op. & Ord., R. 44, Page ID # 942, n.2.) But, based on its analysis that Plaintiffs lacked standing, the court noted that its "analysis would likely lead to the same result," i.e., that its claims are unripe. (*Id*.) This Court need not address

ripeness either if it agrees with the District Court that Plaintiffs lack standing, which they do. Nevertheless, Plaintiffs' claims are not ripe for review for the same reasons they lack standing.

### A. For a claim to be ripe, the factual record must be sufficiently developed and a credible threat of harm must exist, and the denial of review must create a hardship.

Ripeness "shares a foundation in Article III's case-and-controversy requirement [of standing]," *Miller v. City of Wickliffe, Ohio*, 852 F.3d 497, 503 (6th Cir. 2017), and often "boil[s] down to the same question[,]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007).

The ripeness doctrine is "designed 'to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.' " *Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505, 509 (6th Cir. 2006) (citation omitted). Questions of ripeness arise in those cases " 'anchored in future events that may not occur as anticipated, or at all.' " *Id.* (quoting *Nat'l Rifle Ass'n of Am.*, 132 F.3d at 294).

In order to establish that a claim is "ripe for judicial resolution, [courts] ask two basic questions: (1) is the claim 'fit[ ] . . . for judicial decision' in the sense that it arises in a concrete factual context and

concerns a dispute that is likely to come to pass? and (2) what is 'the hardship to the parties of withholding court consideration'?" *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). Thus, while "the ripeness requirement is somewhat relaxed in the First Amendment context, there nonetheless must be a credible fear of enforcement." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (citing *Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 479 (2d Cir. 1999)).

Plaintiffs fail to meet these requirements.

### 1. Plaintiffs did not allege a credible threat of enforcement under the ELCRA or EAA.

Again, a chilling effect "has never been considered a sufficient basis, in and of itself, for prohibiting state action." *Younger*, 401 U.S. at 51; *see also Marchi*, 173 F.3d at 479 (holding that anti-abortion activists' as-applied challenge to Freedom of Access to Clinic Entrances

Act was not ripe for review because they did not show that the alleged "pattern of activity" would ever come to pass). Instead, courts "look at each case to determine the consequences of staying . . . [its] hand." *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010).

For the same reasons discussed in Argument I.B.2., Plaintiffs failed to sufficiently allege a credible threat of enforcement for purposes of establishing ripeness. But briefly, since the Commission's adoption of its interpretive statement in 2018 and the *Rouch World* decisions, none of the disputed provisions in the ELCRA (or the EAA) have been interpreted as Plaintiffs speculate. And none of the Defendants have directly, or even indirectly, interfered with Sacred Heart's employment and educational decisions, or infringed on its religious beliefs, as an employer or educational institution.

Here, although Plaintiffs have advised that Sacred Heart's "pastor wants to post a statement on the school's website reaffirming Sacred Heart's commitment to Catholic doctrine on marriage and sexuality" and Sacred Heart wants to advertise employee positions—including an art teacher and a coach—explaining the school's requirement that

employees live out Catholic teachings on sexuality and gender identity on its website and others—they have not sufficiently alleged an imminent threat of investigation or prosecution because of these religious beliefs.

There is no indication that Sacred Heart will be targeted for disfavored treatment or that Plaintiffs' speech or association will be chilled. The complaint contained only abstract allegations anchored in future events that might not occur at all—or might occur differently than Plaintiffs anticipate.

The MDCR is charged with receiving, initiating, conciliating, adjusting, disposing of, issuing charges, and holding hearings on complaints alleging a violation of the ELCRA. Mich. Comp. Laws § 37.2602(c). But, in their complaint, Plaintiffs did not allege that a complaint had been filed against Sacred Heart with the MDCR. Nor did the complaint allege that anyone has threatened to file such a complaint. Additionally, despite the complaint's many paragraphs outlining the burdens of the MDCR's investigatory process (Compl., R. 1, Page ID ## 44–46), Plaintiffs have not claimed the MDCR has *sua sponte* or responsively initiated or threatened to initiate an

investigation of Sacred Heart in the wake of the Michigan Supreme Court's decision in *Rouch World*, *LLC*. (*Id.*, Page ID # 27.)

In this case, Plaintiffs simply speculate on how Defendants will interpret the law and apply it to an undetermined set of facts in the context of a future administrative complaint that may never be filed. *See Doe,* 78 F.4th at 944–45 (concluding claim was not ripe for adjudication where disciplinary investigation had not concluded at the time the complaint was filed and the outcome of the investigation may not have occurred as the plaintiff feared).

Likewise, despite her authority to prosecute criminal violations under the EAA, Mich. Comp. Laws § 750.147, Attorney General Nessel has not prosecuted or threatened prosecution against Sacred Heart or any other entity, religious or otherwise, under that provision. Indeed, there is no case law demonstrating any previous Attorney General has filed an action to criminally enforce the EAA.

Plaintiffs simply failed to sufficiently plead in their complaint a credible threat of enforcement under the ELCRA or the EAA.

### 2. Plaintiffs' claims do not arise out of sufficiently concrete facts to support judicial review.

Here, the facts as alleged are not sufficiently concrete to allow for adjudication. *See Marchi*, 173 F.3d at 478 (finding claim unripe when it "would be forced to guess at how [the defendant] might apply the . . . directive). In the employment context, Plaintiffs' request for relief would force the District Court to speculate on things such as whether Sacred Heart would be granted a BFOQ exemption under the ELCRA if it exercised its option to apply for one—which it has not done. *See* Mich. Comp. Laws § 37.2208. The complaint acknowledges that the MDCR may make "individualized assessments of employment positions and exempt some positions for BFOQs[.]" (Compl., R. 1, Page ID # 57.)

Sacred Heart denies that it is a place of public accommodation. (*Id.,* Page ID # 41, n.4.) Moreover, Plaintiffs assert the EAA does not apply to Sacred Heart as a private school. (Op. & Ord., R. 44, Page ID ## 946–47.) However, to the extent Plaintiffs surmise Sacred Heart may be considered a place of public accommodation, Plaintiffs would force the District Court to speculate on whether any patrons would complain about its the use of pronouns, separate restroom access, separate sports teams, publications, etc. (Compl., R. 1, Page ID # 41–

44.) This forces the court to speculate as to how the MDCR, if it *did* launch an investigation based on complaints or reports of sexual orientation or gender identity discrimination, would choose to address religious rights in relation to the ELCRA based on the act's specific caution that it "shall not be construed as preventing the commission from securing civil rights guaranteed by law other than the civil rights set forth in this act." Mich. Comp. Laws § 37.2705(1). Again, the Commission has not put out an interpretive statement or otherwise opined on that issue. Neither has Attorney General Nessel.

While Plaintiffs' complaint included many factual allegations, their alleged fear that some type of action will be taken against Sacred Heart and how such an action might be resolved by Defendants are both speculative and hypothetical. Thus, Plaintiffs' claims do not arise in a sufficiently concrete factual context to make them fit for adjudication.

### 3. Plaintiffs have not shown sufficient hardship absent judicial review.

At this time, there is no evidence that Plaintiffs will suffer a hardship if judicial review is denied. Given that no action has been taken against Sacred Heart, no investigation launched or threatened,

no complaint filed against it with the MDCR, and there is no indication that the Attorney General is poised to criminally prosecute it, any alleged hardships are too speculative to support judicial review.

Contrary to claims in the complaint, Michigan law has not been definitively interpreted to prohibit the kinds of activities Sacred Heart alleges to be at risk. Again, it has only been a little over a year since the issuance of *Rouch World* and the amendments to the ELCRA are not yet effective. In the employment arena, for example, Plaintiffs cite no Michigan cases interpreting Michigan law as prohibiting a religious employer from asking prospective employees about whether they can follow and effectively communicate certain beliefs; seeking, recruiting, and hiring employees who agree with certain religious beliefs; or posting employment opportunities that indicate a desire to hire employees who share certain religious beliefs. (Compl., R. 1, Page ID # 36.) And in the public accommodations arena, to the extent Sacred Heart is a place of public accommodation, Plaintiffs cite to no Michigan cases interpreting the ELCRA or the EAA's provisions as requiring all Catholic schools to use a student's or staff's preferred pronouns, to educate children contrary to their Catholic faith, or to prevent them

from having separate access to sports teams, facilities and restrooms. (Compl., R. 1, Page ID # 42.) The absence of precedent addressing religious exemptions under the ELCRA post-*Rouch World* further lessens the possibility of an *impending* investigation and prosecution and underscores the prematurity of this lawsuit.

Sacred Heart can continue to engage in its mission of delivering faith-based education without losing its opportunity to file a future lawsuit if specific action is taken against it. In the meantime, it can await a future case where Michigan courts grapple with the question the Michigan Supreme Court left unanswered in *Rouch World* (due to the plaintiff's failure to preserve the issue of religious rights for appellate review). And if it is unsure of how the Commission will apply *Rouch World* or other precedents, it can request a declaratory ruling from the Commission. Mich. Admin. Rules, R. 37.20. Finally, nothing is preventing Sacred Heart from filing an application for a BFOQ exemption under Mich. Comp. Laws § 37.2208, other than its mere prediction that the process will be futile.

Any hardship that Sacred Heart is experiencing now is of its own making—not Defendants'—and provides no grounds for reviewing

Plaintiffs' otherwise unripe claims. And relative to Parents, the ELCRA and the EAA do not apply. (Op. and Ord., R. 44, Page ID # 946.)

## III. The District Court properly declined to address Plaintiffs' motion for a preliminary injunction where the court determined it lacked subject-matter jurisdiction.

Below, the District Court properly concluded that because Plaintiffs had not "demonstrated Article III standing sufficient to invoke federal-court jurisdiction, any decision from th[e] Court regarding how the statutes might apply to Plaintiff would be advisory[.]" (Op. & Ord., R. 44, Page ID # 961.) It thus concluded that its only "function" was to dismiss the case. (*Id.*) However, in a footnote, it observed that "[e]ven if this Court were empowered to reach the merits of [Plaintiffs'] motion for a preliminary injunction, [they] would have failed to make the requisite showing for injunctive relief, for the same reasons stated herein." (*Id.*, Page ID # 961, n.7 (citing *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019) (irreparable injury must be both certain and immediate, not speculative or theoretical).) These determinations should be affirmed.

### A. Plaintiffs' request that this Court grant an injunction should be rejected and the matter remanded to the

**District Court for full consideration of the injunction factors.**

On appeal, Plaintiffs argue that because they are "likely to succeed on the merits, this Court should reverse and instruct the lower court to enter the requested preliminary injunction." (Appellants' Br., Doc. 21, Page ID # 74.)  However, the District Court's one-sentence footnote regarding the motion for preliminary injunctive relief is dicta. See, e.g., *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 526 (6th Cir. 2020) (Nelson Moore, J., dissenting) ("Dicta is defined as '[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential.' ").

Even if the sentence could be considered a decision on the motion, the District Court assessed only one of the four requisite factors.  And contrary to Plaintiffs' suggestion, the District Court did not address the substantial likelihood of success factor, but rather determined Plaintiffs had not shown irreparable harm for the same reasons they had not shown a credible threat of enforcement for purposes of standing—no injury was imminent because Plaintiffs' fear were speculative.  (Op. & Ord., R. 44, Page ID # 961, n.7.)

Nevertheless, Plaintiffs argue this Court should "reverse and remand with instructions [for the District Court] to enter the requested preliminary injunction" because "injustice might otherwise result." (Appellant's Br., Doc. 21, Page ID # 63–64) (quoting *Hormel v. Helvering*, 312 U.S. 552, 557 (1941).) In *Hormel*, which did not involve a preliminary injunction, the Supreme Court observed that there "may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below." 312 U.S. at at 557. But this case is not so "exceptional" that it would warrant this Court's consideration, in the first instance, of whether to grant or deny a preliminary injunction, which itself is "extraordinary" relief. *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (preliminary injunctive relief "is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.' ").

Moreover, in *Hormel* the Supreme Court observed that appellate courts normally do not consider issues not raised below because it is the trial courts that "determine questions of fact," and "[t]his is essential in

order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide[.]" *Hormel*, 312 U.S. at 556. "[I]t is equally essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." *Id*.

Here, Defendants opposed the motion for a preliminary injunction on all factors, but their argument on the substantial likelihood of success prong was limited to the jurisdictional arguments of standing, ripeness, and the failure to establish the factors for seeking declaratory relief. (Defs.' Resp. to Prelim. Inj. Mot, R. 26, Page ID # 448–475.) So, Defendants have yet to make a merits argument regarding the constitutionality of the ELCRA or the EAA, or proffered any evidence by way of affidavits, testimony, etc., in support of such an argument.

Were this Court to reverse the District Court's dismissal for lack of standing, the case should be remanded for consideration of Plaintiffs' motion for a preliminary injunction, at which time Defendants can respond accordingly. *Foresight Coal Sales, LLC. v. Chandler,* 60 F.4th 288, 304 (6th Cir. 2023) ("Having concluded that Foresight Coal was not

likely to succeed on the merits, the district court declined to address the rest of the preliminary injunction factors. We remand for the district court to examine the other three factors in the first instance."). *See also Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014) (remanding to district court for consideration of injunction factors after this Court reversed court's determination it lacked jurisdiction).

This Court should thus decline Plaintiffs' request for entry of a preliminary injunction on remand.

**B.    If this Court addresses the merits of Plaintiffs' request for a preliminary injunction, it should deny that request where Plaintiffs cannot satisfy the four factors necessary for such relief.**

A preliminary injunctive is an extraordinary remedy that should be granted only "upon a clear showing that the plaintiff is entitled to such relief and proof that the circumstances clearly demand it." *S. Glazer's Distribs. Of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (citations omitted).  Moreover, its purpose is simply to preserve the status quo until a trial on the merits can be held. *Benisek v. Lamone,* 138 S. Ct. 1942, 1945 (2018).  "[T]he plaintiff bears the burden to justify relief, even in First Amendment cases." *Platt v.*

*Bd. of Comm'rs on Grievs. & Discipline of the Ohio Supreme Court*, 769 F.3d 447, 453 (6th Cir. 2014) (citing *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)).

Courts consider four factors when ruling on a motion seeking a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *Bailey v. Callaghan*, 715 F.3d 956, 958 (6th Cir. 2013) (quoting *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011)).

Assuming, for the sake of argument, that Plaintiffs can demonstrate a likelihood of success on the merits, the remaining factors weigh in favor of Defendants and against injunctive relief.

1.  **Plaintiffs have not demonstrated they will suffer irreparable harm absent issuance of an injunction.**

Should this Court conclude that Plaintiffs have sufficiently demonstrated a credible threat of harm for purposes of standing, that does not, ipso facto, mean they have established irreparable harm for purposes of injunctive relief.

Even the strongest showing on the other three factors cannot "eliminate the irreparable harm requirement." *D.T. v. Sumner Cnty. Schs.,* 942 F.3d 326–27 (citing *Friendship Materials, Inc. v. Mich. Brick, Inc.,* 679 F.2d 100, 105 (6th Cir. 1982)). The existence of irreparable harm is indispensable: If the plaintiff is not facing imminent and irreparable injury, there is no need to grant relief now as opposed to at the end of the lawsuit. *Id.* at 327.

To demonstrate irreparable harm, the plaintiffs must show "that . . . they will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.,* 443 F.3d 540, 552 (6th Cir. 2006). The harm must also be such that there is no adequate remedy at law. *See United States v. Miami Univ.,* 294 F.3d 797, 816 (6th Cir. 2002). The movant must also show that it will suffer

the injury before a final judgment. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.").

On appeal, Plaintiffs argue that, absent a preliminary injunction, they will suffer irreparable harm due to an alleged continued violation of its First Amendment rights. (Appellant's Br., Doc. 21, Page ID # 74.) But for all the reasons stated above in Defendants' standing and ripeness arguments, Plaintiffs have not, even as of the filing of this brief, shown that Defendants are poised to imminently enforce the ELCRA or the EAA *against Sacred Heart.* That administrative actions may be pending as to other entities does not establish irreparable harm to Plaintiffs for purposes of an injunction.

Further, both the ELCRA and the EAA require interpretation with existing constitutional provisions, and none of the Defendants have issued any administrative decisions or interpretations applying the ELCRA's new protections for sexual orientation and gender identity and expression to a religious organization or entity. So, Plaintiffs'

assertion that Defendants will apply these laws in a manner that will deprive it of its constitutional rights *is entirely speculative.*

Finally, should a complaint be filed or an investigation be initiated regarding compliance with the ELCRA or the EAA against Sacred Heart, Plaintiffs can bring a renewed motion for a preliminary injunction. But, as of this time, no such action has occurred, and neither the Parents nor Sacred Heart are facing a risk of any imminent and irreparable injury. For this reason alone, Plaintiffs' request for an injunction was correctly denied by the District Court and should be so as well by this Court.

> ### 2. Issuance of a preliminary injunction would harm Michigan residents and would be contrary to the public interest.

Factors three and four in the preliminary-injunction analysis—harm to third parties and to the public—overlap here. *Nken v. Holder*, 556 U.S. 418, 435 (2009) (the harm to the opposing party and the public interest "merge when the Government is the opposing party").

The State's interests here are paramount. The Supreme Court has recognized that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers

a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301 (2012)

(C.J. Roberts in chambers) (quoting *New Motor Vehicle Bd. of Cal. v.*

*Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977)). *See also Priorities USA*

*v. Nessel*, 860 Fed. Appx. 419, 422–23 (6th Cir. 2021) (recognizing "an

injury in the infringement of the state's sovereign interest in passing

and enforcing its laws").

This Court has also recognized that "the public interest lies in a

correct application" of the law and "upon the will of the people of

Michigan being effected in accordance with Michigan law." *Coal. to Def.*

*Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006)

(quoting *Congregation Lubavitch v. City of Cincinnati*, 923 F.2d 458,

460 (6th Cir. 1991)). "Thus, the public interest necessarily weighs

against enjoining a duly enacted statute[.]" *Priorities USA*, 860 F.

App'x at 423.

The Commission was created by the Michigan Constitution to

investigate civil rights issues. Mich. Const. 1963, Art. V, § 29. The

ELCRA and the EAA were duly enacted by the Michigan Legislature.

Defendants should continue to have the opportunity to apply these

statutes to pursue discrimination claims—especially in light of the fact

that the ELCRA provides it "shall not be construed as preventing the commission from securing civil rights guaranteed by law other than the civil rights set forth in this act." Mich. Comp. Laws § 37.2705(1). "[G]iving effect to the will of the people by enforcing the laws they and their representatives enact serves the public interest." *Thompson v. Dewine*, 959 F.3d 804, 812 (6th Cir. 2020) (cleaned up).

For these reasons, the balance of harms and public interest factors weigh in favor of Defendants and thus in favor of denying injunctive relief.

In sum, even if Plaintiffs can demonstrate a likelihood of success on the merits, where they cannot meet any of the other injunction factors, especially irreparable harm, their request that this Court direct the District Court to enter an injunction should be denied.

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, Defendants-Appellees respectfully request that this Court affirm the decisions of the District Court granting their motion to dismiss and denying Plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

*/s/ Cassandra Drysdale-Crown*
Cassandra A. Drysdale-Crown (P64108)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorney for Defendants-Appellees
Civil Rights & Elections Division
P.O. Box 30736
Lansing, MI 48909
(517) 335-7659
DrysdaleCrownC@michigan.gov
Meingasth@michigan.gov

Kimberly Pendrick (P60348)
Assistant Attorney General
Attorney for Defendants-Appellees
Civil Rights & Elections Division
3030 W. Grand Blvd., 10th Floor
Detroit, MI 48202
PendrickK@michigan.gov

Dated: December 20, 2023

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the part of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains no more than 13,000 words.  This document contains 11,245 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2013 in 14-point Century Schoolbook.

Respectfully submitted,

*/s/Cassandra Drysdale-Crown*
Cassandra A. Drysdale-Crown
(P64108)
Assistant Attorney General
Attorney for Defendants-
Appellees
P.O. Box 30736
Lansing, MI 48909
(517) 335-7659
DrysdaleCrownC@michigan.gov

## CERTIFICATE OF SERVICE

I certify that on December 20, 2023, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ *Cassandra Drysdale-Crown*
Cassandra A. Drysdale-Crown (P64108)
Assistant Attorney General
Attorney for Defendants-Appellees
P.O. Box 30736
Lansing, MI 48909
(517) 335-7659
DrysdaleCrownC@michigan.gov

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Defendants-Appellees, per Sixth Circuit Rule 28(a), 28(a)(1)-(2),

30(b), hereby designated the following portions of the record on appeal:

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Complaint | 12/22/2022 | R. 1 | 1-227 |
| Plts' Prelim. Injunction Mot | 12/22/2022 | R. 4 | 239-244 |
| Sacred Heart's Prelim. Injunction Brief | 12/22/2022 | R. 5 | 245-327 |
| Defs' Br. in Support of Mot | 02/28/2023 | R. 23 | 364-422 |
| Resp. to Prelim. Inj. Mot | 02/28/2023 | R. 26 | 427-486 |
| Opinion & Order | 08/22/2023 | R. 44 | 930-961 |
| Judgment | 08/22/2023 | R. 45 | 962 |
| Notice of Appeal | 08/23/2023 | R. 46 | 963-965 |