No. 23-1781

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

SACRED HEART OF JESUS PARISH, GRAND RAPIDS; JERRY HATLEY; ROBIN HATLEY; JOSEPH BOUTELL; RENEE BOUTELL; PETER UGOLINI; KATIE UGOLINI,

*Plaintiffs-Appellants,*

v.

DANA NESSEL, in her official capacity as Attorney General of Michigan; JOHN E. JOHNSON, JR., in his official capacity as Executive Director of the Michigan Department of Civil Rights; et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Michigan
Case No. 1:22-cv-01214

**APPELLANT'S MOTION FOR LEAVE TO SUPPLEMENT THE APPELLATE RECORD OR TAKE JUDICIAL NOTICE**

David A. Cortman
Ryan J. Tucker
Katherine L. Anderson
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
dcortman@ADFlegal.org
rtucker@ADFlegal.org
kanderson@ADFlegal.org

Cody S. Barnett
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
cbarnett@ADFlegal.org

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

*Counsel for Plaintiffs-Appellants*

Appellants Sacred Heart and Parents Jerry and Robin Hatley, Joseph and Renee Boutell, and Peter and Katie Ugolini move the Court to supplement the appellate record with or take judicial notice of additional evidence that supports its standing. Appellees (Michigan) do not consent to this motion.

Sacred Heart operates a classical Catholic pre-kindergarten through twelfth-grade school, the only of its kind in the region. Parents have several children that attend Sacred Heart precisely because it seeks to cultivate a holistic Catholic community. Opening Br. 1, 5–10. Both Sacred Heart and Parents challenged the Elliott-Larsen Civil Rights Act and Michigan's public-accommodations law because Michigan interprets these laws to compel the school to, among other things, allow students to use restrooms inconsistent with their sex. *Id.* at 22–32. Michigan argued the school lacked standing because it had not previously prosecuted similar entities. Reply Br. in Supp. of Mot. to Dismiss, R.32, PageID#764. The district court agreed, dismissing the case because it thought there wasn't enough evidence that Michigan would enforce its law against a school like Sacred Heart. Order, R.44, PageID#954, 957.

The proffered evidence consists of news articles, attached as Exhibit A, confirming that the Michigan Department of Civil Rights is investigating a school for alleged "unequal treatment based on gender identity"—all because the school required a student to use a restroom consistent with that student's sex. Moreover, an attorney representing

1

that student indicated that he was prepared to file complaints against "other school districts" if necessary.

This evidence bolsters the school's standing because it further demonstrates what Sacred Heart knew when it filed its complaint: Michigan actively enforces its laws, facilitates public enforcement of those laws, and refuses to disavow here despite having more than enough facts to do so.

Courts supplement the record on appeal when new evidence speaks to an issue that would otherwise "divest" the court of "jurisdiction." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 682 n.7 (9th Cir. 2023) (en banc). This Court should consider this evidence under its inherent equitable authority or its ability to judicially notice records.

Appellate courts have inherent equitable authority to supplement the record on appeal, and they regularly exercise that authority when supplemental facts shed light on their jurisdiction. Mot. to Suppl. 2, ECF No. 22; *accord* 16A Charles Alan Wright et al., *Federal Practice and Procedure* § 3956.4 (2023 update) ("Supplementation may be particularly likely to occur if the item to be added … goes to the court's subject-matter jurisdiction."). This Court evaluates several factors to decide whether to exercise that authority, including: (1) the date the proponent discovered the evidence; (2) "whether proper resolution of the case [is] beyond dispute"; (3) justice and efficiency; and (4) whether the opposing party

knows about the evidence. *United States v. Murdock*, 398 F.3d 491, 500 (6th Cir. 2005); *see also* Mot. to Suppl. 3.

The proffered news articles meet these factors. They were published only recently. It is efficient to consider them now because Michigan cannot offer a "reason to believe that anything in the[m]"—including Michigan's own statements—"is untrue." *Thomas More L. Ctr. v. Obama*, 651 F.3d 529, 536 (6th Cir. 2011), *abrogated on other grounds by NFIB v. Sebelius*, 567 U.S. 519 (2012). And Michigan knows about the evidence.

The news articles also resolve Sacred Heart's standing "beyond any dispute." *Murdock*, 398 F.3d at 500. The school has standing, Opening Br. 21–49; that Michigan is investigating *another school* for its restroom policy—one of the very things Sacred Heart noted in its complaint—heightens Sacred Heart's credible fears that the State will enforce its laws against Sacred Heart, too.

Contrary to the district court's assumption, the news articles show that Michigan actively investigates and prosecutes allegations of gender-identity discrimination, entitling Sacred Heart to a presumption that it faces a credible enforcement threat. *Id.* at 33. This Court has also considered such active enforcement as bolstering a plaintiff's credible fears. *Id.* at 35–39.

Next, contrary to the district court's holding, the articles demonstrate that Michigan's laws are easy to enforce. The Act deputizes the public to initiate enforcement actions. *Id.* at 39–40. That's another

3

factor this Court has used to find standing before. *Id.* The news articles detail how this plays out: the State launched an investigation based solely on an attorney's complaint. That attorney ominously warned that he could pursue action against "other school districts." And under Michigan's laws, he need not have clients—or even any connection at all—in those school districts to file a complaint.

The records also dispel Michigan's argument and the district court's conclusion that disavowal is "impossible" here. Order, R.44, PageID#958. Michigan initiated a discrimination charge based on a school's policy that required students to use only those restrooms consistent with their sex. In its verified complaint, Sacred Heart noted that, due to religious convictions, it "maintains separate restroom facilities" based on "biological sex." Complaint, R.1, PageID#14. Faced with this fact, Michigan refused to disavow enforcement against Sacred Heart for its restroom policy. That Michigan hasn't yet disavowed shows that it is unwilling to do so, which again confirms Sacred Heart's standing.

Alternatively, this Court could judicially notice the news articles. *Ohio v. Becerra*, 87 F.4th 759, 781–82 (6th Cir. 2023) ("[W]e retain the power to take judicial notice of changed circumstances."). Judicial notice may be taken "at any stage of the proceeding," including "on appeal." Fed. R. Evid. 201(d) and advisory committee's note to subdivision (f). The news articles "can be accurately and readily determined from sources whose

4

accuracy cannot reasonably be questioned," as they contain recorded statements from Michigan officials. Fed. R. Evid. 201(b).

The factors weigh decisively in favor of supplementing the record on appeal with this evidence. Alternatively, this Court can judicially notice these records. Though Sacred Heart has standing even without these records, they further evince the credible fear Sacred Heart has that Michigan will enforce the Act against the school. These records should be considered here.

Dated: February 16, 2024

Respectfully submitted,

*/s/ Cody S. Barnett*
Cody S. Barnett
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
cbarnett@ADFlegal.org

# RULE 32(G)(1) CERTIFICATE OF COMPLIANCE

This motion complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because it contains 1,006 words, excluding parts of the motion exempted by Fed. R. App. P. 27(a)(2)(B).

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: February 16, 2024

*/s/ Cody S. Barnett*
Cody S. Barnett

*Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2024, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Cody S. Barnett*
Cody S. Barnett

*Attorney for Plaintiffs-Appellants*

# EXHIBIT A

# Lansing State Journal

EDUCATION

# Williamston schools under state investigation for sex discrimination



**Sarah Atwood**
Lansing State Journal

Published 9:02 a.m. ET Dec. 14, 2023 | Updated 1:31 p.m. ET Dec. 14, 2023

WILLIAMSTON — The Michigan Department of Civil Rights is investigating a student's complaint of sex discrimination by Williamston Community Schools.

The Williamston student's complaint was filed in September and the Michigan Department of Civil Rights began its investigation in October, said Marcelina Trevino, an attorney for the MDCR.

Due to the ongoing investigation, Trevino said the department cannot speak on the specifics of the complaint, but she added that unequal treatment based on gender identity was the basis of the complaint.

Williamston Community Schools Superintendent Adam Spina said in an email that the school had been advised by their legal counsel not to comment.

Jay Kaplan, staff attorney for the American Civil Liberties Union of Michigan, said that the organization sent a September letter over bathroom use to the district, which was "not really responsive."

He said that the district then notified the family that they would not be allowing the student to use the bathroom that corresponded with their gender identity, and the student would have to use the one based on the sex assigned to them at birth or "the office bathroom or nurse's bathroom."

"A student won't feel safe using a bathroom that doesn't match with their gender identity," Kaplan said. "If the student is told to use a separate bathroom entirely... this can make them feel ostracized."

In March, the Elliot-Larsen Civil Rights Act was expanded to include sexual orientation and gender identity as protected characteristics.

In 2017, the Williamston school board approved a policy stating the district would recognize a student's chosen gender "once the student and/or his or her parent/guardian, as appropriate, notifies District administration that the student intends to assert a gender identity that differs from previous representations or records."

*Contact Sarah Atwood at satwood@lsj.com*

# 6 NEWS INVESTIGATES

#6!*3 1'4#·5 ADA9E KLGF ! GE E MFAQ 1;@GGDK>9;=; ANADJA?@LKAFN=KLA?9LAGF

by: Todd Heywood, Josh Sanchez
Posted: Dec 12, 2023 / 11:59 PM EST
Updated: Dec 13, 2023 / 07:16 AM EST

SHARE

WILLIAMSTON, Mich. (WLNS) – Williamston Community Schools is under investigation by the Michigan Department of Civil Rights.

The agency empowered to investigate violations of Michigan civil rights law received a complaint in September of this year. Vicki Levengood, communications director at MDCR, confirmed the ongoing investigation by email Tuesday.

The complaint was filed by a student who is being represented by the ACLU of Michigan, Jay Kaplan LGBTQ+ Rights Project Staff Attorney tells 6 News.



Jay Kaplan LGBTQ+ Rights Project Staff Attorney, ACLU of Michigan. (WLNS)

The reason? Kaplan says the school district is failing to follow its policies regarding gender identity.

6 News learned of the complaint and investigation while interviewing Kaplan about the controversy in Potterville over bathroom access for students based on the gender with which they identify, rather than their gender assigned at birth.

Williamston Community Schools went through a political maelstrom in 2017 when the Board of Education adopted policies that allow transgender youth to be acknowledged by the gender they identify as, rather than their gender assigned at birth. The district also adopted a policy allowing anyone at WCS who felt uncomfortable in a

specific bathroom to raise the concern with district staff and accommodations would be made.

The district was sued in federal court in 2018 over the policies, and Federal District Court Judge Hala Jarbou dismissed the case in October 2020. Several board members also faced recall elections, the Lansing State Journal reported. One was unseated.

Levengood tells 6 News that MDCR has "jurisdiction to take complaints regarding allegations of discrimination for unequal treatment due to gender identity in education under the Elliott-Larsen Civil Rights Act."

The Michigan Legislature expanded the Elliott-Larsen Civil Rights Act to include gender identity and sexual orientation earlier this year. That expansion is set to take effect in February 2024. For now, MDCR investigates under the state supreme court ruling as well as an interpretive statement from the Michigan Civil Rights Commission that deems discrimination based on gender identity, gender expression and sexual orientation violates the state laws prohibiting discrimination on the basis of sex.

Kaplan says both federal and state laws protect transgender people.

"Michigan civil rights laws which have been interpreted by Michigan supreme courts to protect LGBTQ people under the category of sex would also apply here," Kaplan says.

Treating people differently based on their gender or gender identity would run afoul of equal protection laws federally and in the state, Kaplan says.

"If a government entity seeks out a group of people or individual for differential treatment, then that could be a violation of equal protection," he tells 6 News.

While the WCS policies don't explicitly address transgender students, Kaplan says it would support a transgender student's ability to use the restroom that aligns with their gender identity.

Previously, the district had been allowing transgender students to use restroom facilities that aligned with their gender identity, but Kaplan says that ended sometime in 2022.

WCS School Board President Nancy Deal referred questions to Superintendent Adam Spina. Spina did not respond to voicemails or emails. 6 News also waited outside his office Tuesday afternoon and evening attempting to interview him.

Additional school board members did not return calls from 6 News.

While WCS is facing the state investigation, it may not be alone. Kaplan tells 6 News he is prepared to send a letter to Potterville School officials as well.

"You're making me think I should write a letter to the Potterville School Board and say, 'Look, stick with your policy, you're doing the right thing.' I've done that before with other school districts," he told 6 News. "Hopefully that school district is getting good legal advice from whoever their counsel is."

Copyright 2024 Nexstar Media Inc. All rights reserved. This material may not be published, broadcast, rewritten, or redistributed.